Case number 19-1133, Merial Inc v. Sergeant's Pet Care Products, Inc. Oral argument, 15 minutes per side. Mr. Castanillas for the appellant. Good morning, Your Honors, and may it please the Court. Greg Castanillas. And Judge Donald, we'd like to save three minutes for rebuttal if we could. In 2011, Sergeants promised Merial that it would not sell any plus flea and tick products until Merial's patent expired in August 2016. Starting in 2014, though, Sergeants breached that promise to the tune of many millions of dollars. We haven't had our day in court on that claim. The District Court in this case denied us that day in court because the Georgia court ruling on Merial's motion for summary judgment in a case against four different companies, not just Sergeants, but four different companies, ruled that Perigo, one of those four companies, a company that acquired Sergeants, had not breached the Sergeants' contract. This court, exercising its de novo review on the question of issue preclusion, should reverse the Michigan court's judgment. It should do this for two reasons, each one of which is an independent ground for reversal. First, the issue of Sergeants' liability for breach of the Sergeants' contract was not the issue that was litigated in the Georgia court. The issue that was litigated there was whether all four of the companies suing Merial were barred from recovering damages under a different contract, the Valsera agreement, because all of them had breached the Sergeants' agreement. The Georgia court thought we were wrong. It denied our motion for summary judgment and will be appealing that ruling as part of our Eleventh Circuit appeal later on, but we accept that for now. So I'll explain later on what the Georgia court got wrong to help the court understand the issues in this case. The Georgia court in this case held very specifically and no more broadly than was necessary. It held that Perigo, only one of the four parties, had not breached the Sergeants' agreement and thus could recover. The Michigan court in this case, however, recognizing that specificity and detail in the Georgia opinion, nonetheless said that the overall import of that opinion was that all of the plaintiffs, actually defendants on a counterclaim in that case, but all four of the parties had not breached the contract. But under this court's decisional law, overall import isn't enough. Ambiguity in the decision means under the case United States v. United Technologies, which we cited in our briefs and again in our letter to the court yesterday under Rule 28J, ambiguity means we win. Secondly, and for similar reasons, the issue of Sergeants' breach or not of the Sergeants' agreement was not in any way necessary to the judgment in the Georgia case. The verdict that was issued, which was explicitly in favor of Perigo, and the verdict form itself says damages awarded to Perigo, did not in any way depend on the conclusion that Sergeants had not breached the Sergeants' agreement. In fact, you can scour the Georgia opinion up and down and you will not find a reference to Sergeants not breaching the agreement in that opinion. So you say that it was not actually, it being the Sergeants' agreement, was not actually litigated or necessary to the outcome of the Georgia court's summary judgment order. If that's the case, what impact, if any, did it have on the Georgia order? The impact that it had is that it let the claim of breach of the Valsera agreement go forward to trial. And that claim went forward to trial on instructions and on a verdict which awarded damages to Perigo. And if you look at the Georgia opinion, one of the things, Judge Donald, that you'll notice is that the court goes into great detail into what we would say is an irrelevancy. Again, I'm not going to challenge that decision here, but it goes into great detail about what Perigo bought, about what Perigo's intent was. That doesn't have anything to do with the Sergeants' marial agreement. That has to do with what Perigo thought it bought with regard to the royalty and then the royalty rate that was anticipated later on in that. And the Georgia court thought that the Valsera agreement effectively trumped the Sergeants' agreement for Perigo because Perigo would not have gotten the benefit of its purchase of the Valsera party. But that's not an inquiry that's appropriate for determining which one of the two contracts should apply. And ultimately, the more important point for this court is that that emphasis in the trial court in Georgia on Perigo and Perigo's intent and Perigo's acquisition shows that that decision was focused on Perigo, not on Sergeants. Now, my friends have come in with their own 28-J letter bringing in the district court's denial of our post-trial motion for JMOL and have seized on what we've characterized in our responsive letter as loose language in that order, describing the holding as plaintiffs had not breached. But that's at best inconsistent with what the Georgia court's summary judgment denial says on its face. And again, ambiguity, the tie goes to the runner, and we win under this court's decisions. Yes, Judge Donald? Well, you may want to hear from Judge Bahls before this, but it seems to me that you have not yet filed an appeal in the Eleventh Circuit. You're here before us making this argument about preclusion. Since you've not yet filed anything in the Eleventh Circuit, is the course that you're proceeding likely to yield some inconsistency, or does it apply in the face of judicial, maybe judicial economy even? Okay. So, Judge Donald, I think I can answer that in the following way. We couldn't appeal until two days ago when the post-trial ruling was issued. It's a matter of timing. It's strictly a matter of timing. We have 30 days, and I can promise you that we'll be noticing our appeal. I can confidently tell you that we'll be noticing our appeal from that one earlier. Now, I want to go back to what I hinted at earlier and explain to you what went wrong in Georgia and what we'll tell the Eleventh Circuit. Again, I'm not arguing it to you. Let me ask you, though, to just hold and let Judge Bahls get his question on the table just in case. I'm sorry. I didn't hear. I didn't raise it. He didn't get it out there. She knows. I don't. She has very good ears and is very sensitive to her fellow judges. Okay. Help me as to whether this is really where the rubber meets the road. Just before subheading two, the Georgia court says a finding, that your motion impacts Perrigo's claims because a finding that it, Perrigo, violated the sergeant's agreement that it was contractually prohibited from selling 329 products, would therefore undermine your claim. In a sense, doesn't the whole thing almost turn as to what they did on that it? Is the it just Perrigo, or does it also encompass sergeants separately? Because maybe what you're going to tell us is that the factual outcome is Perrigo can sell under the Valsera agreement, but Perrigo also wants to sell under the sergeant's name and label, and you say that they can't do that because of the sergeant's agreement. So when the Georgia court says it was contractually prohibited, does it cover everything, or do we read Perrigo as all it says? Is that kind of a? You're talking at the bottom of page nine of the Georgia. You know, I have it pre-no, everything. We no longer have everything. Right before Roman II governing. Right before Roman II. So my question to you is not who's right, who's wrong, but is that really the guts of what we should look at? Does the Georgia court, when it said it, necessarily mean sergeants as an independent entity? I think the it there is a reference to Perrigo. Because that's the antecedent. I'm not saying which side's right, but you think it's Perrigo. They're going to say that it's Perrigo in all of its manifestations, ownership. And they will say that. Even though sergeants is an independent company. And that's right. And my answer to you, Judge Boggs, to that is that, again, the tie goes to the right. Right now I'm not asking you who's right, but is that the right place to look? That is one of the right places to look. That seems to be, to me, both the clearest and the most direct of the ways. I actually think there's one that's even clearer. And that's at page 20 of the summary judgment order. And if you don't have a paginated portion, I'm not sure I can help you too much because the stamp on the top of the opinion. It's okay. I can find it. So, anyway, but you'll see at page 20, the Georgia court's ruling still, the sergeants' agreement did not disappear when Perrigo merged with Valsera. What happens to Perrigo's obligation under that contract is the real crux of this case. What's the date of that order? The date of this order is 24 January 2017. Thank you. You'll also see that at page 24 of that same order, as well as note 6, talking about Perrigo did not breach and Perrigo could, quote, legally circumvent the sergeant's sale ban. With regard, Judge Donald, to your questions earlier to me about judicial economy, I want to take just a moment to explain to you what's going to happen in the 11th Circuit here and why we think that we'll prevail. Now, we think we should prevail here regardless of how that case comes out. I want to make that absolutely clear. But there's also a stay issue lurking in the back here. So I want to explain, since the district court thought we hadn't shown a likelihood of success, I'm going to show really simple reasons why the district court got the interpretation of these two contracts wrong. And that is that the district court decided that one had to trump the other. And the district court thought there wasn't any authority out there with regard to how to deal with this. Perrigo argued the second-in-time controls, but that doesn't really work when you have new parties and different parties. Simply put, these contracts could have been read together and harmoniously so. The mistake the district court in Georgia made was in reading the Valsera Agreement as providing Valsera with an affirmative right to make these products after a certain period of time expired. That's not what we gave them. We gave a covenant not to sue for infringement of a single particular patent with regard to a single patent line. We didn't say you're free from any other contractual obligations. We didn't say we won't sue you on a contract if there's a contract that bars you from doing this. We didn't say we won't sue you on another patent if we had another patent that covered a different aspect of their product. So the mistake that the district court made in this case, in that we have a high degree of confidence that the Eleventh Circuit will reverse on, is not reading the two agreements in harmony. But that said- One of the arguments you're just saying is why you should win even against Valsera. Right. Or Perrigo standing- And that goes back to your question. I thought the way that you forget the Eleventh Circuit could win here is that the right way to read it is that Perrigo is standing two sets of shoes. In Valsera's shoes, they can sell Valsera's products. Under Sargent's shoes, they can't sell Sargent's products. Well, again, that goes back to my comment- When I say products, I say, you know, the 329 patent. But here, and I realize my time is up and I'm eating into my rebuttal, but I'll take it from there, I think, and be solicitous of the court. We have to argue sort of out of both sides of our mouth here. We recognize that. Now, on the one hand, we're going to tell you that the Eleventh Circuit is going to reverse. But at the same time, we're telling you that buy this on its face and we can go forward against Sargent's. Now, that question was put to us on the reconsideration motion in Georgia about whether we thought that, you know, the Valsera agreement, they could use Valsera equipment and use Valsera boxes. We said that issue isn't presented here. It's not really our position that they can do that. In fact, we think that they're barred because both agreements control them and they can honor the bar on selling until the expiration of the patent without- because the other one doesn't provide a right. But the simple fact is here, and I'll say it again, the order in Georgia went only to Perigo. Everything they're going to say to you about why it didn't only go to Perigo is at best going to show ambiguity. And under United Technologies, we win. Thank you. I'll be back on rebuttal unless you have other questions. I will only deduct one minute from your rebuttal, so you'll have two minutes. Thank you. Judge Bachelet, did you have a question for him? No. Okay. Good morning, Your Honors. May it please the Court, my name is Paul Garrity. I represent the Defendant Appellee Sargent's Pet Care Products here today. Just listening to the questions, Judge Boggs, that you were bringing before my adversary has me thinking that I think the way to go here today before the panel is to direct my attention to where, Judge Boggs, you see the rubber hitting the road. And I think it's a useful exercise before this Court, before this panel, to spend some time specifically looking at the provisions of the Summary Judgment Ruling in which the Court addressed the issue of who it was, in fact, referring to when it used the term Perigo in the Summary Judgment Ruling. Based on two pieces of the Summary Judgment Opinion only, footnote six, and an incomplete snippet from one additional sentence in the opinion, my learned counsel has said that it refers to Perigo and only Perigo. That, we respectfully submit, is entirely incorrect and is contradicted by a close review of the actual Summary Judgment Opinion itself. I'm going to attempt to do that now, Judge Zahn. What I'm going to do first is look at footnote six, which is found in the Summary Judgment Opinion. It's found in the reported decision at 267, fence up third, at page 1374. Muriel repeats a snippet of this footnote no less than five times in its briefing. The first full sentence from which it takes the snippet is revealing. The sentence reads in full, Because the Court finds that Perigo did not breach the Sergeant's agreement, it need not decide whether Muriel waived its rights under the contract by accepting royalty payments from Perigo under the Valsera Agreement. Forgive me, please, if I'm going to be very focused on the choice of language here, but as we've just been discussing, this really matters, specifically with respect to this opinion. I'm going to go through a short exercise here to actually walk the Court through what the Court was referring to in that footnote when the Court is discussing the fact that there were royalty payments from Perigo. The issue of royalty payments received by Muriel is first addressed earlier in the Summary Judgment Opinion. It's at 267, fence up third, at 1368. At that point in the opinion, the Court writes, Perigo paid Muriel two million dollars. That was an upfront payment that was due before the party began selling the product. The basis in that opinion for this holding by the Georgia Court was document 181 from the Summary Judgment Briefing in Georgia. This was the opposition that was filed by the Perigo entities to Muriel's Summary Judgment motion. Actually, this document was unsealed yesterday by the Georgia District Court, by Judge Jones. In their brief, that document 181-39, page 20, the Perigo entities, that is, Perigo entities are Perigo Company, Sargents, Valsera, Phytopharm, the four entities. They were the defendants in that Summary Judgment motion. They, in the brief, argued that Perigo Animal Health, which is the DBA under which Sargents does business, wired two million dollars to Muriel. The Georgia Court, in its ruling, identifies this wiring as coming from Perigo. My point is simple, which is the Court in Georgia, knowing and understanding that the actual wire came from Sargents, is referring to the party that sent the wire as Perigo. I submit respectfully to this panel that what the Court is doing there is evidencing to the panel how the Court is using the word Perigo, which it uses throughout the course of the opinion. I'm going to continue with two more examples, please, because, again, I do believe, Judge Boggs, this is where the rubber hits the road. It's actually, Judge Boggs, in the portion of the opinion, just leading up to the section that you were addressing. This is in the Georgia Order at 267 Fed Sup 3rd 1368. I'm going to read a quotation, please, from the opinion, and then I'm going to address the quote. Quote, less than two weeks after Perigo reentered the flea and tick medicine marketplace, on December 12, 2014, it sued Marial for breach of the Valsera Agreement in the District of Nebraska. Once again, the Court is referring to Perigo and it. Perigo Company alone did not sue Marial for breach in the District of Nebraska. It was the Perigo entities, once again, the four different parties, Perigo Company, Sargents, Valsera, Phytopharm. There's no dispute that all four sued Marial for breach of the Valsera Agreement. That's correct, Your Honor. How would Sargents have had any claim under the Valsera Agreement? Under the Valsera Agreement, Judge Boggs. I'm not saying right or wrong, but I'm just saying. They have rights under the Valsera Agreement as an affiliate of Perigo Company, which ultimately came to stand in the shoes of Valsera. The rights of the two different agreements extended out to affiliate entities within the company. You're saying that's what the agreements say? Yes, in both agreements, Your Honor. And if I may, and forgive me if I'm gilding the lily here, but I'm going to do one more example because, again, I think this is critical. I think we're really, Judge Boggs, you've put your finger on what the issue is here, which is when the word Perigo is used throughout the Summary Judgment Opinion, to whom or which entities is Judge Jones referring to there? So I will turn, please, to 267 Fed Sub 3rd at 1369. And, again, I'm going to quote, please, from the actual Summary Judgment Opinion itself. Quote, Marial then filed suit against Perigo. In this court, Perens, Marial v. Perigo, number 1-15-CV-13, close Perens, alleging breach of the Sargent's Agreement based on Perigo's post-November 30, 2014, sales of flea medicine. I submit to your honors, once again, you're seeing and understanding to whom Judge Jones is referring to when he uses the denomination Perigo. He's referring to all four Perigo entities. Marial did not sue Perigo Company alone. Marial sued the four entities together. So the shorthand that's being used by Judge Jones throughout this Summary Judgment Opinion is to actually address specifically those four Perigo entities together. And he's calling them Perigo. There's absolutely no dispute that Marial did not file a claim that Perigo Company was alone in breach of the Sargent's Agreement. It claimed that Perigo Company, Sargent's, Velsera, and Fido Farm were in breach. I'm going to leave that examination of the actual language that's found in the Summary Judgment Order. And I'm going to turn to the second of two, the only two, bases upon which my learned counsel has advanced that what should be distilled from the Summary Judgment Order is that the court was only referring to Perigo Company when it used the word Perigo in the actual text of the order. We've discussed the first of those two, and that's footnote six, which is repeated ad nauseum throughout the briefing. Then the only other basis that is set forward is a snippet from the Georgia order followed by a claim that the court ruled with regard to Perigo and not to Sargents. Marial repeats this throughout its brief and says, The Georgia court, quote, held that there was a, further quote, opening for Perigo to legally circumvent the Sargent's Agreement sales ban. This is critical. The full sentence, please, which is found at 267 F sub 3rd, 1374, and was actually relied upon by Judge Quist in Michigan, reads, The right to sell under the Valsera Agreement flowed to Perigo and its affiliates, including Sargents, the opening for Perigo to legally circumvent the Sargent's sales ban. So again, what is happening here is that throughout, and this is the fundamental flaw in the argument that's advanced by Marial on this appeal. They just want you to simply jump right over and take them at their word that everything in the opinion is only directed to Perigo Company. Respectfully, that's not the case, and in fact, when the language is parsed, I think it will be abundantly clear to this court that, in fact, it's not limited to Perigo Company, but it applies to all four Perigo entities. My Lord and Counsel mentioned the submission that we made two days ago under Rule 28J, which was the ruling that we've now submitted to the court on the JNOV by Judge Jones, which issued on Tuesday of this week. I direct the court's attention to the language that's in that JNOV, and I specifically direct the court to two different sections of the JNOV. First, I submit that the denial order should put an end to the misuse of the, quote, legally circumvent language, meaning that second set of language that we just talked about. Addressing the same exact passage from the Georgia order, Judge Jones, two days ago, ruled that the terms of the Valsera Agreement trumped the Sargent's Agreement, which, according to Judge Jones, quote, created the opening for Perigo and its affiliates to legally circumvent the Sargent Agreement's sales ban. Please recall that what my Lord and Counsel has been relying upon was to say it only said there that it was Perigo, and because that language only had Perigo in it, it must only relate to Perigo Company. Judge Jones just put an end to that. Judge Jones just told you exactly what that section applies to, and it applies to both Perigo Company and its affiliates, which includes Sargents. Second, the Georgia court provided its own description of the scope of the Georgia order. The court itself identified the Georgia order as, quote, finding that plaintiffs did not breach the Sargent's Agreement. The plaintiffs that Judge Jones is referring to there are four different entities, Perigo Company, Sargents, Valsera, and Fido Farm. There is no such ruling in the opinion in the summary judgment context or now on the JNOV denial ruling that so limits this only to Perigo Company. Respectfully, once this court looks at this issue of and examines the issue of to whom Judge Jones was properly referring to when he used the designation Perigo throughout his opinion, throughout the numbers of the reported opinions in this litigation, of which there are many, you're going to find that the shorthand Perigo is not being delineated to Perigo Company. It's being delineated to all four of the Perigo entities together, as a result of which the court below properly found that the breach of the Sargent's Agreement was at issue and was adjudicated in Georgia, and furthermore, that it was necessary to the rule. And the breach of the Sargent's Agreement includes by Sargent's, that is the favorable but less favorable opinion on their side. Perigo can sell anything it wants as the owner of Valsera. It just can't do it as the owner of Sargent's. Now, I don't know whether this is a real trademark kind of issue at bottom. I'm not quite sure that if you win the first part, what's really at issue? Is it using Sargent's name and goodwill to sell the same thing? Really, what's at issue? So what's at issue ultimately is a great question, of course, Judge Box. And this is really what's in front of the Eleventh Circuit. This is not, frankly, what was in front of the Western District of Michigan, and it's not what's in front of this court today, which is the issue of did collateral estoppel apply? Was the issue of the Sargent, the breach of the Sargent's Agreement adjudicated? Was it necessary? We submit that it was. What is happening in Georgia, and so now we know that they're going to go to the Eleventh Circuit. God bless. What's happening in Georgia is that there's a situation in which there were two separate sets of rights. In your view, is it possible, maybe I'm trying to duck it, that the Eleventh Circuit could say you're right that you can sell under Velsera, but they're right that you can't sell under Sargent's, and that would solve our problem, wouldn't it, if they were to go that way? Twofold. Unfortunately, no. So for starters, this is all now moot by the fact that the patent that was at issue has long expired, and so the rights and the issues— We're fighting about money. We're fighting about money now. We're fighting about the verdict that was secured. No principle, just money. That's my end. I was brought here. I didn't take this appeal, Your Honor. I see your light is on. Thank you for your argument. Thank you very much. Mr. Constand, I'm giving you two minutes. So I'm going to start very quickly, Judge Boggs, with the facts. They are selling under the Sargent's label. They're selling under Sargent's brand. They're selling under Sargent's EPA registration, which is essential to get these products on the market. That's a sideshow to the issues here, but I want to make sure the record's clear on that. And you're right. If the Eleventh Circuit were to split the baby, as it were, in that way, then it would solve your problems here. Now, to the case that you have. My friend came up here and said, well, look at these things from the summary judgment order where the judge uses Perigo. Those were true statements. Perigo sued. Muriel sued Perigo. It's also true that other parties sued Muriel, and Muriel sued other parties. And they sued them under those other names. Right. Absolutely. They were different parties. And if I say I'm going to sue Boggs, Donald, and Batchelder in a complaint, and then I say I sued Judge Boggs, that's true. That is a true statement. It is not the complete statement, but it's a true statement. Now, that's consistent with what the judge was doing here, which was focusing on Perigo. Look at all the other references my friend didn't mention to you. The very next page, after he uses the it language from Judge Boggs, the judge in Georgia starts with the analysis and says, Muriel seeks a summary judgment that Perigo assumed sergeant's rights. Perigo is in breach of the sergeant's agreement. It goes on. You go on to page 14. There is great contrast between after inter-Perigo. When it purchased sergeant's assets, Perigo assumed all of sergeant's rights. Perigo was not responsible for royalty payments that obligated sergeants to make. There is an incredible care in distinguishing between and among the parties in this opinion. It wasn't shorthand at all. This was an opinion that was focused on Perigo. I've already answered the question about the summary judgment. I'm sorry, the JML ruling for a couple of days, and the JML order did not put an end to this. In fact, all it did is create the ambiguity that means that we win in this case. Thank you for your time. Thank you very much. The matter is submitted, and we will give you an order in due course. Thank you so much.